## THE DE VEAUX POWELL.

### THE LACKAWANNA.

#### (District Court, E. D. New York. January 31, 1903.)

1. COLLISION—STEAM VESSELS CROSSING—CONCURRING FAULT.

A ferryboat, leaving her New York slip to cross North river in the daytime as a tug was coming up with a tow several hundred feet below, claimed her privilege of crossing ahead by signal, which was not answered. A second signal was unanswered, and she proceeded on her course, a collision resulting. The master of the tug, who was acting as wheelsman, pilot, and lookout, neither initiated nor answered a signal, and paid no attention to the ferryboat, although his was the burdened vessel. *Held*, that both vessels were in fault; the tug, for inattention and failing to maintain a proper lookout, and the ferryboat, for proceeding after her signals were unanswered, and the inattention of the tug had become apparent.

In Admiralty. Suit and cross-libel for collision.

James J. Macklin, for Hoboken Ferry Company.

Butler, Notman, Joline & Mynderse and Mr. Brown, for Harris and for the De Veaux Powell.

THOMAS, District Judge. At about 5:45 a. m. in July the tug De Veaux Powell, towing an empty barge on a hawser, was going up the North river, with the tide ebb, the wind N. N. W., and was several hundred feet below, and a thousand feet off-shore from, the Fourteenth

¶ 1. Signals of meeting vessels, see note to Union S. S. Co. v. Erie & W. Transp. Co., 30 C. C. A. 630.

Street Ferryhouse, when the ferryboat Lackawanna issued therefrom. After clearing the slip, the ferryboat claimed her privilege by sounding one whistle, and, in default of reply, repeated the same, after going twice her length, but received no answer. She continued under a port wheel, which turned her obliquely across the tide and the course of the Powell toward her ferryhouse at Fourteenth street, Hoboken. The tug and ferryboat collided, and for the injuries received by the vessels the above libels have been filed.

The captain of the Powell was leaning indolently on the wheel, undertaking ineffectually the duties of pilot, wheelsman, and lookout. He testified that he saw the Lackawanna at Fourteenth street, and did not see her again until she ran across the bow of the tug at Twenty-First street. His contention is that the ferryboat was behind the tug, and, after straightening up the river, paralleled the tug's course, until at Twenty-First street she circled around the latter's bow, whereupon the collision occurred. This statement is incredible, and illustrates the culpable inattention of the Powell's pilot. The ferryboat, swinging under a port wheel to get her heading, might seem for a time to run alongside the Powell, especially as the latter starboarded when the Lackawanna was abreast; but the latter did not have occasion to go, nor did she go, to Twenty-First street, and the collision probably occurred below Eighteenth street. Although the tug was the burdened vessel, she did nothing to avoid the collision until it was inevitable. She neither initiated nor answered signals, she had no proper lookout, and the pilot was negligent in the discharge of each of the dual duties assumed by him. Whether the Powell was privileged or burdened, she knew that the Lackawanna was claiming and assuming the privilege, and yet she made no protest. But this situation must have appeared plain to the pilot of the Lackawanna. He twice claimed the right of way, and understood that it was not accorded. He knew of the continued inattention or misapprehension of the pilot of the tug, as the vessels converged over a considerable distance on crossing courses, and yet kept on his way to the menaced collision. This cannot be excused, in view of any explanation given, and it follows that the costs and damages must be divided.